## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANDRE LONDON,

      **Plaintiff,**

      **v.**                             **CASE NO.  25-3022-JWL**

WYANDOTTE COUNTY
SHERIFF'S DEPARTMENT, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is detained at the Wyandotte County Detention Center in Kansas City, Kansas ("WCDC")**.**  The Court granted Plaintiff leave to proceed *in forma pauperis*.  On February 25, 2025, the Court entered a Memorandum and Order (Doc. 4) ("M&O") dismissing the Wyandotte County Sheriff's Department and directing the officials responsible for the operation of the WCDC to file a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 4, at 6.)  The *Martinez* Report (the "Report") has now been filed.  (Doc. 13.)  The Court's screening standards are set forth in detail in the M&O.

### I.  Plaintiff's Allegations

Plaintiff's claims are set forth in the Court's M&O and are repeated here.  Plaintiff alleges that on January 11, 2024, as he was being booked into the WCDC, Sergeant Cortes used excessive force on him.  Plaintiff states that he was "under the influence of intoxicants" when he was arrested, and "[h]is understanding of the situation, arrest, and booking process was cloudy" as a result.

(Doc. 1, at 2.)    According to the Complaint, the situation "escalated when [he] made an attempt to flee." *Id*.  Both as he was subdued and after he was restrained and on the ground, he was "met with excessive force" causing multiple "traumatic injuries." *Id*. at 1, 2.  Plaintiff alleges that Cortes used closed fists and elbows to repeatedly deliver blows to Plaintiff's back, head, and ribs. *Id*. at 3, 5.  He states that a number of unknown staff members failed to intervene and even encouraged Cortes's actions. *Id*.  He alleges that he required "extensive medical care" after the beating and now suffers from chronic nerve damage, chronic migraine headaches, and mental anguish. *Id*. at 5.

Plaintiff claims excessive force under the Fourth Amendment and violation of his rights under the Fourteenth Amendment.  Plaintiff names as Defendants the Wyandotte County Sheriff's Department; Sergeant Cortes, Wyandotte County Deputy Sheriff; two different corrections officers named Johnson; and unknown John Doe corrections officers.

## II.  The *Martinez* Report

According to the Report and attachments, Deputy Johnson received a call from dispatch saying there was a highly combative subject being brought to the WCDC.  (Defensive Action Report ("DAR") of Deputy Marcus Johnson, Doc. 13-3, at 1.)  When Plaintiff arrived, multiple officers were escorting him. *Id*.  Reportedly, it took several officers and a security guard tasing Plaintiff, who is about 6'4" and appeared to be under the influence of something, to secure him in custody.  (Use of Force Board Decision, Doc. 13-1, at 2.)  However, Plaintiff went through the intake process without incident.  (Doc. 13-3, at 1.)

At approximately 1:15 p.m., Plaintiff was let out of his cell in intake to make a telephone call before he was moved to the pods. *Id*.  Plaintiff quickly exited the intake area without permission, ignoring staff commands to stop.  He headed toward the central hallway and employee

access doors toward central control.  *Id*.  Sergeant Cole asked Plaintiff where he was going.  (DAR of Sergeant Jonathan Cortes, Doc. 13-2, at 1.)  Plaintiff replied either, "I am gone" (*id*.) or "I'm going to go make a phone call." (Incident Report of Sergeant A. Cole, Doc. 13-6, at 1; Incident Report of Sergeant Freeman, Doc. 13-7, at 1.)  Cortes, who was assigned as Intake Sergeant, tried to restrain Plaintiff, but he broke free and ran away, toward the employee exit/entrance sliding door.  *Id*.; DAR of Deputy Jonathan Strader, Doc. 13-4, at 1.  Deputy Marcus Johnson deployed a taser two times; the first deployment did not stop Plaintiff.  (Doc. 13-3, at 1.)  Plaintiff attempted to grab or reached toward a civilian mental health employee.  (Doc. 13-2, at 1; Doc. 13-6, at 1.)  He fell to the floor with the second deployment.  *Id*.  Plaintiff actively resisted being restrained while on the floor, kicking at officers, slapping the taser prongs away, and making biting motions.  *Id*.; Doc. 13-4, at 1; Doc. 13-7, at 1.  Cortes, who was attempting to restrain Plaintiff, delivered a strike to Plaintiff's face to keep him from getting control of the taser.  (Doc. 13-2, at 1.)  He delivered additional closed-fist strikes to Plaintiff's upper body after perceiving an imminent threat of being bitten.  *Id*.  Once control of Plaintiff's arms was achieved, Cortes stopped striking him.  *Id*.  Medical personnel evaluated Plaintiff after the incident and noted only a minor laceration to the arm.  (Doc. 13, at 3.)

The Report does not mention or provide any video footage of the incident.  Cortes's DAR states: "Video Footage: Issued – Not Activated."  (Doc. 13-2, at 3.)  Johnson's DAR states "Video Footage: Issued – Activated – Not Effective."  (Doc. 13-3, at 3.)  Strader's DAR states: "Video Footage: Issued – Not Activated."  (Doc. 13-4, at 3.)  Three other employee witnesses are noted, but apparently they either did not have cameras or their cameras were not activated.  *Id*. at 4; Incident Report of Sergeant Freeman, Doc. 13-7, at 1.

The Report also includes no medical records.

### III.  Discussion

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force."  *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).  The Fourteenth Amendment governs any claim of excessive force brought by a "pretrial detainee"—one who has had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Est. of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (quoting *Bell v. Wolfish,* 441 U.S. 520, 536 (1979).  On the other hand, the Fourth Amendment governs excessive force claims arising from "treatment of [an] arrestee detained *without a warrant*" and "*prior to* any probable cause hearing."  *Id.*

Excessive force claims under both the Fourteenth and Fourth Amendments are based on objective reasonableness.  The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *see also Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").  Therefore, to make out a Fourteenth Amendment violation, Plaintiff must show that the defendants' conduct "was objectively harmful enough to establish a constitutional violation."  *Brown*, 974 F.3d at 1183.

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Vette*, 989 F.3d at 1169 (quoting

*Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020)).  In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment."  *Id.* (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)).  "The inquiry is an objective one, and one that considers the totality of the circumstances."  *Id.*  Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The Supreme Court in *Graham* listed factors that may be relevant to the reasonableness analysis: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).  In evaluating the final factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force."  *Vette*, 989 F.3d at 1169.  The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases."  *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

Plaintiff's account of events and the staff members' descriptions included in the *Martinez* Report largely agree up to the point where Plaintiff was on the ground.  There, the accounts deviate. Plaintiff alleges that Cortes punched him repeatedly after he was on the ground and restrained. The Report asserts that Plaintiff continued to resist while on the floor, was attempting to bite Defendant Cortes, and Cortes only punched him until control of his arms was achieved.

The other major difference is in the extent of Plaintiff's injuries. Plaintiff alleges that he required extensive medical care and suffers chronic nerve damage and headaches as a result of the incident. The Report states that Plaintiff received only a minor laceration but provides none of Plaintiff's medical records.

The *Martinez* Report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). The Court "cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits." *Id*. at 1109. "Furthermore, '[a] bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* Report are less specific or well-documented than those contained in the report.'" *Bellamy v. Kansas*, 2024 WL 3718065, at n.5 (10th Cir. Aug. 8, 2024) (unpublished) (quoting *Hall*, 935 F.2d at 1109); *see also Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

The Court is unable to resolve the factual disputes at this stage of the proceedings and finds that this case survives screening under 28 U.S.C. § 1915A.

### IV.  Motion to Appoint Counsel

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 14).  He requests the appointment of counsel based on the factual complexity of the issues, his limited ability to litigate, his limited access to a law library, and his limited understanding of the law.  *Id*. at 1.

The Court has considered Plaintiff's motion.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion at a later stage of the proceedings.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 14) is **denied** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's claims survive the Court's screening under 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Court directs the Clerk of the Court to prepare and issue waiver of service forms for Defendants Sgt. Jonathan Cortes, Dep. Marcus Johnson, and Dep. D. Johnson pursuant to Fed. R. Civ. P. 4(d) to be served upon the defendants at no cost to Plaintiff. The remaining "John Doe" defendants cannot be served until identified by the plaintiff.

**IT IS SO ORDERED**.

**Dated July 15, 2025, in Kansas City, Kansas.**


**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**